IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| OBEDIAH WALKER III, As Executor of the Estate of Obediah Walker, Jr.<br><br>          Plaintiff,<br><br>   v.<br><br>VIAD CORP,<br><br>          Defendant. | MDL 875<br><br>CIVIL ACTION NO. 16-215 |

**OPINION**

**Slomsky, J.**                                                                                                                                                                                                                                                                           July 1, 2019

## I.    INTRODUCTION

On November 25, 2015, Plaintiff Obediah Walker III ("Plaintiff") filed this action in state court, claiming that his father, Obediah Walker, Jr. ("Decedent"), developed lung cancer after being exposed to asbestos-containing products while serving in the United States Navy. (Doc. No. 1 at 12.) Named as Defendants were several manufacturers, including Defendant Viad Corp ("Defendant" or "Viad Corp"), which is alleged to be the successor in interest to Griscom Russell Company, a now defunct company that manufactured and sold equipment to the Navy from the 1940s to the early 1960s. (Id. at 17.)

On January 15, 2016, Defendant Viad Corp removed this case from the Court of Common Pleas of Philadelphia County to the United States District Court for the Eastern District of Pennsylvania as part of MDL-875.[1] (Doc. No. 1.) Aside from a Notice of Removal, Defendant did not file an Answer pursuant to Federal Rule of Civil Procedure 81(c)(1)-(2). (Id.)

---

[1] Multidistrict litigation ("MDL") is litigation comprised of multiple civil cases involving one or more common questions of fact, but the cases are pending in different districts. Such actions may be transferred to any single district for coordinated or consolidated pre-trial proceedings.

1

On July 31, 2017, Defendant filed a Motion for Summary Judgment. (Doc. No. 31.) On September 14, 2017, in its Reply to Plaintiff's Response in Opposition to the Motion for Summary Judgment, Defendant raised the successor in interest defense for the first time. (Doc. No. 37.) On February 14, 2019, Defendant's Motion for Summary Judgment was denied. (Doc. No. 58.) In an Opinion, this Court declined to address the successor in interest defense because it was (1) raised for the first time in the Reply to Plaintiff's Response, and (2) Defendant failed to file an Answer raising the defense. (Doc. No. 58.) However, the Court allowed Defendant to file a memorandum as to why the defense was not waived and as to why Defendant should be permitted to raise it at trial. (Doc. No. 58 at 27.)

On February 22, 2019, Defendant filed an Answer, which included its successor in interest affirmative defense. (Doc. No. 60.) On February 27, 2019, Defendant filed a Memorandum of Law in support of this defense. (Doc. No. 62.) On March 12, 2019, Plaintiff filed the instant Motion to Strike the Answer. (Doc. Nos. 65.) On March 26, 2019, Defendant filed a Response in Opposition to Plaintiff's Motion. (Doc. No. 68.) Finally, on April 1, 2019, Plaintiff filed a Reply to Defendant's Response to the instant motion. (Doc. No. 69.)

Plaintiff's Motion to Strike (Doc. No. 65) is now ripe for disposition. For reasons discussed infra, Plaintiff's Motion to Strike will be denied.

## II. BACKGROUND

First, the Court will address the pertinent factual background of this case. Second, it will discuss Defendant Viad Corp's alleged culpability as the successor in interest to Griscom Russell

---

28 U.S.C. § 1407. The district to which cases are sent is decided by the United States Judicial Panel on Multidistrict Litigation, as authorized by 28 U.S.C. § 1407. In 1991, the Judicial Panel on Multidistrict Litigation transferred all cases involving personal injury damages caused by asbestos products to the Eastern District of Pennsylvania in what is now known as MDL-875. See In re Asbestos Products Liability Litigation (No. VI), 771 F. Supp. 415 (J.P.M.L 1991).

Company. Finally, the Court will outline the relevant procedural history including the Court's Opinion on the Motion for Summary Judgment and the instant Motion to Strike.

### A. Decedent's Alleged Exposure to Asbestos-Containing Products and Death from Lung Cancer

In 1969, Decedent Obediah Walker, Jr. enlisted in the United Sates Navy, and from 1969 until 1971, served on active duty as an electrician aboard the U.S.S. Plymouth Rock. (Doc. No. 26-1 ¶ 8.) Plaintiff claims that Decedent's work aboard the U.S.S. Plymouth Rock exposed him to asbestos. (Doc. No. 1.)

Decedent maintained the electrical systems on the U.S.S. Plymouth Rock, and as a result, worked on every part of the ship. (Doc. No. 36-5 at 18:23-19:2.) In particular, electricians like Decedent worked in the ship's engine room repairing gauges, pipes, boilers, turbines and other machinery essential to the proper functioning of the ship. (Id. at 23:5-25:5.) The United States Navy required that all surfaces on the ship reaching 125 degrees Fahrenheit or more be covered with insulation containing asbestos. As a result, much of the machinery in the engine room was covered with insulation that needed to be stripped in order to perform necessary repairs. (Doc. No. 37-1.) Therefore, working in the engine room was dangerous because electricians like Decedent were likely to be exposed to asbestos fibers when insulation was stripped from machinery. (Id. at 32:18-22:4.)

The electricians aboard the U.S.S. Plymouth Rock also worked on or near the ship's distillation plant. (Id. at 34:13-19.) A distillation plant is a piece of equipment that converts salt water into fresh water for consumption. (Id. at 34:20-35:2.) Like the machinery in the engine room, the distillation plant and pumps were covered with insulation containing asbestos that needed to be stripped in order to perform repairs. (Id.) While electricians did not personally strip

the insulation from the distillation plant and supporting pumps, they stood watch in the "confined space" where the distillation plant was located. (Id. at 35:11-12.)

In December 2013, Decedent, who smoked for the majority of his life, was diagnosed with mesothelioma. (Doc. No. 36-2.) He passed away less than four months later, on March 17, 2014. (Doc. No. 35-4.) After his death, post-mortem pathology testing showed that Decedent did not suffer from mesothelioma; rather, he died from invasive non-small cell carcinoma, a type of lung cancer. (See Doc. No,. 36-4.) Decedent's lung cancer appears to have been caused by exposure to asbestos. (Doc. No. 36-9 at 2.)

### B. Defendant's Alleged Culpability as Successor in Interest to Griscom Russell Company

Plaintiff claims that the distillation plant aboard the U.S.S. Plymouth Rock was manufactured by Griscom Russell Company and that Decedent was exposed to asbestos when workers stripped insulation from the distillation plant and its supporting equipment. (Doc. Nos. 1, 36.) In support of this claim, Plaintiff points to the Synopsis of Machinery and Hull data for the U.S.S. Fort Snelling, a naval ship of the same class as the U.S.S. Plymouth Rock. (Doc. No. 36-6; Doc. No. 57 at 23:4-19.) The Synopsis notes that the document summarizes machinery aboard every ship that falls within the "U.S.S. LSD 28" class of Navy vessels, which includes vessels numbered "U.S.S. LSD 28, 29, 30, 31." (See Doc. No. 36-6 at 1-18.) At the Motion for Summary Judgment hearing, Plaintiff stated the U.S.S. Plymouth Rock falls within the U.S.S. LSD 30 class of Navy vessels. (Doc. No. 57 at 23:4-19.) Significant here, the Synopsis states that the distillation plant aboard ships within the U.S.S. LSD Class 28 class, including the U.S.S. LSD 30, were manufactured by Griscom Russell Company. (Doc. No. 36-6 at 17.)

Griscom Russell Company, which is now defunct, was a subsidiary of Hamilton-Thomas, a Delaware corporation. (Doc. No. 37 at 21.) From the 1940s to the early 1960s, Griscom Russell

4

manufactured distillation plants used for the desalination of seawater aboard Navy vessels. (Id. at 16.) While these distillation plants were neither dangerous nor defective when sold, Navy safety regulations required them to be covered with asbestos-containing insulation. (Id.)

In January 1962, Baldwin-Lima-Hamilton ("BLH-PA"), a Pennsylvania corporation, purchased 93.4% of Hamilton-Thomas' stock in a cash deal. (Doc. No. 37 at 21.) In April 1962, Griscom Russell Company's shareholders voted to dissolve the corporation. (Id. at 26.) In October 1962, Griscom Russell Company sold its plant and all of its manufacturing equipment to more than five-hundred manufacturers. (Id. at 28.) On December 18, 1963, Griscom Russell Company formally dissolved. (Id. at 23.)

In 1965, Armour and Company ("Armour"), a Delaware corporation, merged with BLH-PA, the entity that purchased a majority of Griscom Russell's parent company. (Doc. No. 38-3 at 4.) As part of this merger, Armour absorbed BLH-PA, and BLH-PA ceased to exist. Armour transferred BLH-PA's liabilities to a newly-formed Delaware subsidiary, Baldwin-Lima-Hamilton ("BLH-DE"). (Doc. No. 37 at 37.) In 1972, BLH-DE changed its name to BLH, Inc., and on November 30, 1975, BLH, Inc. formally dissolved. (Id. at 56-62.)

In the present action, Plaintiff sued Defendant Viad Corp as successor in interest to Griscom Russell Company. (Doc. No. 1.) Defendant does not contest that it is Armour's corporate successor, but how or when Defendant Viad Corp became involved with Armour or BLH, Inc. is unclear in the record. What Viad Corp does dispute is its designation as the successor in interest of Griscom Russell Company. (Doc. No. 7; Doc. No. 37 at 3 n.14; Doc. No. 60.)

### C. Procedural History

Plaintiff filed two state court actions related to Decedent's alleged exposures to asbestos-containing products while serving in the United States Navy. First, on February 5, 2014, Plaintiff sued fifteen manufacturers in the Court of Common Pleas of Philadelphia County, alleging that

5

their products, or the products made by their corporate predecessors, exposed Decedent to asbestos. See Walker v. Blackmer Pump Co., Civ. No. 0365 (Ct. Com. Pl. Philadelphia, filed Feb 5, 2014).[2]

Second, on November 15, 2015, Plaintiff filed a second state court action, this time suing seven new Defendants, including Viad Corp as successor in interest to Griscom Russell Company. See Walker v. Amtrol, Inc., Civ. No. 3273 (Ct. Com. Pl. Philadelphia, filed Nov. 25, 2015). On January 15, 2016, Defendant Viad Corp removed the case to the United States District Court for the Eastern District of Pennsylvania as part of MDL-875. (Doc. No. 1.) In the Notice of Removal, Defendant claimed it was "erroneously sued as the alleged successor in interest to Griscom Russell" and disputed "that it is, in fact or law, the successor in interest to Griscom Russell." (Id. at 7.) Defendant did not file an Answer to the Complaint in state court or in this Court. (Doc. No. 58.)

On July, 31, 2017, Defendant filed a Motion for Summary Judgment. (Doc. No. 31.) On February 14, 2019, this Court denied Defendant's Motion finding that "a reasonable jury could find that Griscom Russell Company products were a substantial factor in causing decedent's lung cancer." (Doc. No. 58 at 15.) On the successor in interest issue, this Court found that it "need not address Defendant's successor in interest argument" because Defendant failed to follow the Federal Rules of Civil Procedure in raising this defense throughout the course the litigation. (Id. at 24.)

When this case was pending in state court, Defendant did not file an Answer to the Complaint pursuant to 231 Pa. Code Rule 1041.1. Nor did Defendant file an Answer to the

---

[2] This case was removed to the United States District Court for the Eastern District of Pennsylvania as part of MDL-875 and settled by the parties.

Complaint pursuant to the Federal Rules of Civil Procedure 81(c)(1)-(2) when this case was removed to this Court.[3] Thus, the successor in interest claim was not raised as a defense under Federal Rules of Civil Procedure 12 or 81(c)(2) either in the Answer to the Complaint or in a motion. (Id.) Aside from the reference to it in the Notice of Removal, this defense was never raised again until it appeared in the Reply brief in support of Defendant's Motion for Summary Judgment. (Doc. No. 37.) In the Reply, Defendant attached hundreds of pages of documentary evidence to demonstrate that it is not the successor in interest to Griscom Russell Company. (Id. at 25.) These attachments included tax returns, corporate documents, and affidavits. Ultimately, the Court concluded new arguments should not be raised in a Reply brief. (Id. at 26.) The Court reasoned as follows:

> To allow a party to subvert the proper course of litigation under the Federal Rules of Civil Procedure would be tantamount to permitting litigation by surprise. This untenable situation only prolongs litigation, increases its expense, and unnecessarily impinges on the resources of the Court.

(Id.)

But the Court did grant Defendant the opportunity to file a memorandum of law on why its right to raise the successor in interest defense at trial was not waived. (Id. at 27.) On February 22, 2019, Defendant filed an Answer to the Complaint (Doc. No. 60) and a Memorandum of Law explaining why its right to raise the defense was not waived (Doc. No. 62). On March 12, 2019, Plaintiff filed a Motion to Strike the Answer to the Complaint (Doc. No. 65) and a Memorandum

---

[3] In Grabenstein v. A.O. Smith Corp., the court noted that "to eliminate the possibility of confusion, scheduling orders in future MDL cases will require all defendants to file an answer in the federal action, regardless of whether or not an answer or entry of appearance has been filed in a state court action." Grabenstein v. A.O. Smith Corp., No. MDL 875, 2012 WL 2849389, at *1 (E.D. Pa. Apr. 2, 2012). The Scheduling Order in the instant case (Doc. No. 14) did not include the language requiring all parties to file an answer regardless of whether an appearance or answer was filed prior to removal.

of Law in support of its Motion (Doc. No. 66).  On March 26, 2019, Defendant filed a Response to Plaintiff's Motion.  (Doc. No. 68.)  Finally, on April 1, 2019,  Plaintiff filed a Reply in further support of its Motion to Strike.  (Doc. No. 69.)

### III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(f) provides that "the court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  A party may file a motion to strike within twenty (20) days after being served with the pleading.  Id.  The court possesses considerable discretion in disposing of a motion to strike under Rule 12(f).  River Road Devel. Corp. v. Carlson Corp., No. 89-7073, 1990 WL 69085, at *5 (E.D. Pa. May 23, 1990).  Motions to strike, however, "are not well favored and usually will be denied unless the allegations have no plausible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues."  Id.  It is well established that striking a pleading should be seldom done by courts because of the practical difficulty of deciding cases without a factual record.  Striking a pleading is a drastic remedy only resorted to when required for the purposes of justice.  N. Penn Transfer, Inc. v. Victaulic Co. of Am., 859 F. Supp. 154, 158 (E.D. Pa. 1994) (citing United States v. Consolidated Coal Co., No. 89-2124, 1991 WL 333694, at *1 (W.D. Pa. July 5, 1991)).

Moreover, a court may allow the untimely filing of responsive pleadings.  Federal Rule of Civil Procedure 6(b)(1)(B) provides that a court may extend the time "on motion made after the time has expired if the party failed to act because of excusable neglect."  Fed. R. Civ. P. 6(b)(1)(B). What constitutes "excusable neglect" is considered a somewhat "elastic concept" and is not narrowly limited to circumstances beyond the Defendant's control.  Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 381 (1993).  As such, courts must equitably balance the four factors articulated in Pioneer.  The factors are (1) the danger of prejudice to the Plaintiff,

(2) the length of delay and its potential impact on judicial proceedings, (3) the reasons for the delay, including whether it was in the reasonable control of the Defendant, and (4) whether the Defendant acted in good faith. Id. at 395; See also In re O'Brien Envtl. Energy, Inc., 188 F.3d 116, 125 n.7 (3d Cir. 1999) (holding that Pioneer factors apply to all excusable neglect inquires arising under the Federal Rules of Civil Procedure).

## IV. ANALYSIS

The issue in this case is whether the untimely filing of a responsive pleading, particularly an Answer to a Complaint, is a sufficient ground to strike the pleading pursuant to Rule 12(f) of the Federal Rules of Civil Procedure. In the instant case, the Answer was filed over three years late.

Plaintiff argues that by not striking Defendant's untimely Answer and the successor in interest defense it would unnecessarily protract litigation thereby increasing time and costs to Plaintiff. Plaintiff also asserts that if the Court denies the Motion to Strike, this Court would in effect be endorsing Defendant's disregard for the requirements of the Federal Rules of Civil Procedure. (Doc. No. 66.)

Defendant argues to the contrary that Plaintiff was put on notice of its successor in interest defense because it was noted in its Notice of Removal. Furthermore, while it did not file a timely Answer in the instant litigation, Defendant claims that because it had successfully raised the defense in other asbestos cases, Plaintiff had notice that it would be raised in this litigation. (Doc. Nos. 62, 68.)

With respect to untimely filings, courts have "balanced the degree of prejudice suffered by the moving party with the desire to resolve cases on the merits rather than by default." Wilson v. King, No. 06-2806, 2010 WL 678102, at *3-4 (E.D. Pa. Feb. 24, 2010). Furthermore, in

determining whether to deny the instant Motion to Strike, the Court also will consider each of the four Pioneer factors in turn, in light of the policy weighing against the striking of a pleading.

### A. The Pioneer Factors

As noted earlier, in determining whether there is excusable neglect under Rule 6(b)(1)(B) of the Federal Rules of Civil Procedure, the Court need balance the four factors as indicated in Pioneer. Again, the factors are (1) the danger of prejudice to the Plaintiff, (2) the length of delay and its potential impact on judicial proceedings, (3) the reasons for the delay, including whether it was in the reasonable control of the Defendant, and (4) whether the Defendant acted in good faith. Pioneer, 507 U.S. at 381. While a factor may weigh against a finding of excusable neglect, it is not dispositive. Id. at 394.

#### 1. Prejudice

First, the Court considers the danger of prejudice to the Plaintiff if the Motion to Strike is denied. Plaintiff argues that Viad Corp's untimely Answer significantly prejudices Plaintiff because it faces a new defense[4] raised for the first time after the close of discovery. (Doc. No. 66.) Plaintiff claims that reopening discovery in light of the successor in interest defense would protract litigation further, thereby resulting in greater costs. Although this action has been ongoing since late 2015, any increase in the duration or expense of this litigation due to reopening discovery on the successor in interest defense would not be unduly burdensome. The prejudice to Plaintiff apart from facing a new defense to its claim is not considerable.

#### 2. Length of Delay and Potential Impact on Judicial Proceedings

Second, the Court considers the length of the delay and impact on judicial proceedings. This case proceeded without Defendant filing an Answer and affirmative defenses until February

---

[4] In addition to the successor in interest defense, Defendant has asserted other affirmative defenses in the Answer.

10

2019, when Defendant filed its Reply raising the successor in interest defense. (Doc. No. 37.) It would appear that Defendant's failure to file its Answer did not delay or impact judicial proceedings through the pleading and discovery phases of litigation. (Id.) Also, a trial date has not yet been scheduled.

This Court does not seek to minimize the fact that Viad Corp failed to file an Answer. It appears, however, that Defendant can expeditiously produce the relevant corporate documents with respect to the successor in interest issue. (Doc. No. 68.) Because Viad Corp has successfully raised this defense in prior asbestos cases, the reproduction of relevant documents, in an abbreviated and narrow discovery period, seems feasible. (Doc. Nos. 37, 38, 62.) Therefore, the further delay and impact on judicial proceedings will not be significant.

### 3. Reasons for Delay

Third, the Court considers the reasons for the delay. Defendant has not provided a reason to justify its failure to file an Answer pursuant to the Federal Rules of Civil Procedure after the case was removed or even when the case was pending in state court. It is worth reiterating here, though, that the reason for the delay and whether it was in Defendant's control does not necessarily trump all other factors or weigh especially heavily against the Defendant. Avon Contractors, Inc. v. Secretary of Labor, 372 F.3d 171, 174 (3d Cir. 2004). All four Pioneer factors must be balanced in determining excusable neglect.

Defendant attempts to justify why its right to raise this defense at trial was not waived. Defendant argues that Plaintiff had notice of its defense because it was mentioned in the Notice of Removal (Doc. No. 1). Defendant also argues that Plaintiff had sufficient notice of the defense because it was raised in prior asbestos cases involving Viad Corp. (Doc. No. 68 at 4.) The Court is not persuaded that either argument is a justification for a failure to file an Answer, but does note that Plaintiff was likely to be on notice of the defense.

The Federal Rules of Civil Procedure, however, are designed to protect the predictability and efficacy of litigation. Disregard for the Federal Rules of Civil Procedure, albeit intentional or negligent, prolongs litigation and burdens resources. Generally, failure to file a pleading cannot be justified by the argument that Plaintiff should, through unofficial channels and inference, anticipate Defendant's defense. Therefore, it is without question that the reason for the delay in filing the Answer was within the control of Defendant and this factor favors Plaintiff.

### 4. Whether Defendant Acted in Good Faith

Finally, the Court considers whether the Defendant acted in good faith. Plaintiff does not contend that Defendant, "purposely withheld its Answer and affirmative defenses as part of a litigation strategy to ambush Plaintiff." (Doc. No. 66 at 12.) Thus, there is no reason, in the record or otherwise, to conclude that Viad Corp purposefully withheld its Answer and successor in interest defense in bad faith.

### B. Resolving Cases on the Merits

Courts favor the resolution of cases on a full factual record. See Wilson, 2010 WL 678102, at *3-4. For example, the Wilson court noted that granting a motion to strike, would "contravene established policies disfavoring motions to strike . . . and favoring the resolution of cases on their merits." Id. (quoting Canady v. Erbe Elektromedizin GMBH, 307 F. Supp. 2d 2 (D.D.C. 2004)).

While the Court takes seriously Plaintiff's concerns of protracted litigation and Defendant's seeming disregard for the Federal Rules of Civil Procedure, barring Defendant from raising its successor in interest defense would be a drastic remedy. Additionally, it would undermine this Court's interest in resolving disputes on the merits. See Hill v. Williamsport Police, Dep't, 69 F. App'x 49, 51 (3d Cir. 2003) If Viad Corp is not the successor in interest to Griscom Russel Company and its alleged liability, then potentially holding Defendant accountable would

be unjust. Because reopening discovery for a brief period will likely resolve this issue, the court will deny the Motion to Strike and allow the Answer and the successor in interest defense to stand.

V.  **CONCLUSION**

For the foregoing reasons, the Court will deny Plaintiff's Motion to Strike. Upon consideration and balancing of the four Pioneer factors, three of which favor Defendant, this Court finds that there is excusable neglect for Defendant filing its Answer and successor in interest defense late. Moreover, in keeping with the strong policy against granting motions to strike, and in accordance with the principle that cases should be decided on the merits, permitting the Answer and successor in interest defense to stand is appropriate here. In sum, the Court will deny the Motion to Dismiss Defendant's untimely Answer and successor in interest defense. The Court will also order that discovery be reopened, limited to the successor in interest defense.